We thank both sides for the argument. The case of Gomez-Cebeda v. Bondi is submitted. Oops, wrong one. The case of Cruz-Coyle v. Bondi is submitted. And we'll next hear an argument in Orellano-Carpa Hall v. Bondi. Oh, that one's just an example. Not doing well. The case of State Fire, Farm and Casualty Company v. Drake Real Estate Group is submitted. And we'll next hear an argument in Salt and Equity Partners v. City of Los Angeles. All right. Good morning, judges. My name is Bruce Altshult. I represent Sullivan Equity Partners. We are the appellant. I believe my remarks will be brief. In preparing for oral argument today, I read Mr. Sewell's brief, my brief. I think we briefed things that we would want to say, so I'm going to just hit a few points. The city attorney argues that White v. City of Pasadena requires the court to follow the administrative hearing because that's the precedent they're relying on. Well, no, the precedent they're relying upon is the California Court of Appeals decision. So we're going to go to that. Well, that's different. I mean, that's fundamentally different because much of your argument is that you can't apply preclusion to administrative decision, but that's not what the district court did here. The district court plainly applied preclusion because of the California Court of Appeals decision. Okay. That's fundamentally different. So why is it that a California Court of Appeals decision can't be recognized for preclusion purposes? The facts of the case tell us why. The California Court of Appeals, Justice Collins, rendered a decision overturning factual findings by the state court judge in favor. We're not an appeals court. We're not the California Supreme Court, and the California Supreme Court, I don't recall offhand if you petitioned for review, but the California state court decision we have in front of us is the California Court of Appeals case, and you can't simply argue they got it wrong because that doesn't matter for issue of preclusion purposes. Okay. Judge Clifton, let me respond fully, and I apologize. The decision by the Court of Appeals reversed the factual findings of the charges, and I understand Your Honor's position. In my brief, I argued the following. That the Court of Appeals decision ordered the state court judge to make certain factual findings that the state court judge hadn't yet found. So, yes, it reversed the state court judge and remanded back to the state court judge. The problem with relying on the Court of Appeals decision is that the very facts that the Court of Appeals required the state court judge to rely on were rendered inadmissible by the state court judge because the California Administrative Act practice precludes the introduction of those facts. So, yes, there is a Court of Appeals decision, and yes, it was remanded back to the state court trial judge, but the state court trial judge was bound by existing law and facts not to let my client introduce those evidence at the state court hearing. It sounds like you're telling us that you think the California court got it wrong, and so you didn't go to the California Supreme Court. You can't appeal here. I think you'd have a Rooker-Feldman problem if you tried to appeal that here, which is why Judge Clifton is talking about issued preclusion. So you may have compelling arguments about irregularities in this administrative proceeding, but how would we get at them? We've got an issued preclusion problem. So that's really all we've got before us, I think. Were you prevented? I think that's why the district court asked you several times. I think she asked you several times. How were you prevented from litigating the unfairness of arguments? We were not allowed to take depositions. We were not allowed to introduce behind-the-scenes contact with the administrative officers and high-powered politicians. We had Public Record Act requests subsequently, which showed that they were biased and it was an unfair administrative hearing, and we couldn't introduce those in front of the state court judge despite the reversal by the Court of Appeal. We were barred by introducing that evidence, and as I briefed in my case, too, I'm going to veer a little to the right here. Let me just add to that. Let's assume for the moment that the state court resolved your fairness claims and held that the litigation state court was fair, was not unfair. Is there anything left for us to do? Yes. And what is that? Knutson and Clark, I briefed. Knutson and Clark are two state court decisions that happened within the last year that said an investigator, administrator, is a constitutional due process violation. Ron Lorenzen was the investigator who investigated the site. He determined that these trees were protected, and he ascended to the Board of Public Works to rule on his own fraudulent findings. I briefed that in my briefs, and there was a case that came down just within the last couple of months that validated it. Can you brief here or to the district? Does the district court know about any of this? The district court heard the Knutson case, but the Clark case came up after the district court ruled. So the part of this that you couldn't bring forward in the district court was Clark? Yes. Clark is the new one. Knutson is the old one. Okay. But it is a constitutional due process violation. What you're giving is California cases, which the California Court of Appeal, I mean, they've looked. I mean, there hasn't been an argument that due process is different in California State Court than it is here, and basically it still sounds to me like you're re-arguing the decision made by the California courts, but that doesn't solve the preclusion problem. What gets us out of being bound by the decision of the California courts? What gets us out, Judge Clifton, is that these are constitutional violations. There are constitutional violations in the California courts too. It's the same issue. You're just wanting us to decide it differently. I mean, I'm sort of excited because I understand the problem that your clients, that the grievance your clients are asserting, but I don't know how it is that weakens to say the California court decision doesn't count anymore. Okay. I've got my notes here. Tangua versus Newfield, it's a Ninth Circuit case, 933, 5th, 3rd, 1061. This talks about issue preclusion. The issue preclusion has four factors. I'm reading directly from Tangua. One, the issue is identical in both proceedings. Issues weren't identical. Two, the issue was not. Did you say they were not identical? Because they weren't raised. I think Tangua requires the issues be raised in both proceedings. In fact, that's factor two. How are the issues not identical? Okay. Because it wasn't raised in the earlier proceeding. What wasn't raised? That there was a constitutional violation that Lorenzen, the investigator, was also the administrator. He prepared a false investigative report. That's what's pled. We're here on a motion to dismiss that. That's the facts underlying your new premises claim. And what we're trying to say is, you know, under California law and federal, all of the claims that could have been raised to support your new premises claim are equally precluded. Okay. Yes. I'm not ignoring you, Joseph. But I'm going on to factor three, which is the point I want to make to the panel. Tangua tells us there was a full and fair opportunity to litigate the issue. That is the basis for issue preclusion. And that was a fact part of my opening brief, that my client was denied the ability to litigate that issue because the state court trial judge would not admit the evidence that was responsive to the court of appeal decision. It's pled that way. I'm here on a motion to dismiss. I believe I've pled facts to get around the fact that we're issue precluded by the court of appeal decision because my client was not given a full and fair opportunity to litigate the issue. Evidence that issue preclusion is a legal question. Pleading facts doesn't necessarily solve your problem. I'm still, I mean, you can tell me that we didn't get a chance at discovery, but that's something you told the California court. You did, in fact, get some additional documents admitted. You did get some limited discovery. And you're asking us to presume that you would have found something that would have made a big difference. Judge Clifton, let me politely interrupt you. My client had the information in the state court trial judge, Mary Strobel, wouldn't let my client admit it. You haven't shown it to us. I apologize, sir. You haven't shown it to us. I mean, I was kind of waiting as I read your brief. Show us the smoking gun that would have turned the tables, and I never saw it. Did I miss something? Yes, I believe so. In my complaint, that's on appeal. You're brief to us. You had an opportunity to tell us why it was that your client was deprived of a fair day in court. And I heard talk, although it wasn't, I didn't think, highlighted quite as much as you've suggested, but I did hear, I've heard quite a lot about discovery being limited. And I also heard something about trying to have documents admitted that only a few were admitted. But I never saw identified anything from the rest of those documents that you got possession of through, I guess, a form of information, public record. So here's your chance to hold up a document and say this document would have made a difference, and I never saw that. Sullivan pled that the Board of Public Works administrators who denied my client their building permit were contacted by the United States House of Representatives, a United States House of Representatives, ruled to pull my client's building permit. The mayor's office, the council member's office, the supervisor's office for the area, they all contacted the Board of Public Works to rule against my client, and that is evidence that the state court trial judge would not entertain. I'm trying to now focus specifically on your question, Judge Clifford. Well, okay, point to what document you held up to us that says this is the smoking gun and this is going to make a difference. Because telling me that people contacted other public officials doesn't seem to do it. The California Court of Appeals seemed to deal with that in terms of what it really took to make that a due process violation. It may have taken what you thought was a restrictive view, but it took that view. And that doesn't tell me why issue preclusion doesn't apply. What's in my brief? You can hold it up to me now. Is there something in the record that you can point me to that would illustrate the concern I've expressed, which is what is it about all this additional information that would have made a difference? As I look at the California Court of Appeals decision, it seemed to me to be mostly based on law, its perception of what had to be established. To make that a due process violation. Respectfully, I disagree with you. Fine, you can disagree, but your problem is I'm the judge. So you have to give me something that gives you some traction, because that's my problem. Well, the Court of Appeals decision went down on the facts that the state court judge found and said that wasn't sufficient. This is what needs to be shown. Now to answer your question directly, Judge Clifton, what evidence does my client have that, first of all, we have the building permits were pulled. Council member Hayden's remarks that they should be pulled because they're Persian. That's kind of offensive. That was not presented to the state court judge or the Court of Appeal. The issue was subsequently delivered to the oversight area that said these housing restrictions, building code restrictions were presented by the members of the community and rejected, yet the Board of Public Works rejected it. You're asking for specific documents that came from the California Public Records Act request. I'm going to reserve my right to add that to a rebuttal. Let me look at my file here. Okay. Let me see if I have anything else intelligent to say. Kind of broadly speaking, my client initially filed in federal court. There was a motion by the city attorney for a Pullman abstention. It was granted. My client did not consent to state court, and my client made an England reservation in state court. So my client returns to federal court where it was originally to litigate the case. This is, as Jim Gatchin says in several other cases, and this is now Reed v. Williams. This is a classic catch-22. My client lost in state court and now can't litigate in federal court. You only have less than a minute for rebuttal. Do you want to save that? Okay. You have a 1983 claim. You lose in state court. You can't litigate in federal court. That's the catch-22. Reed v. Williams says Jim Gatchin, which is a 1-year-old, 9th Circuit. Want to go? Okay. We'll hear from the other side. Good morning, Your Honors. Charles Sewell for Bellevue City of Los Angeles. On the Jim Gatchin matter, that case and Utah Construction and the other cases they cited in that regard, those applied to unreviewed administrative decisions. And I think he counseled one at great length to talk about this sort of preclusion trap that he was alluding to. And that's when you're forced to – you have an unreviewed state decision and you're forced to take it to a writ before you can go to federal court. And that's not what happened here. This is issue preclusion based on a state court judgment. In this matter, they first filed in federal court. They filed their 1094.5 writ as part of their federal complaint. It was remanded pursuant to Pullman abstention because it was a sensitive area of social policy land use. It was stayed pursuant to Pullman abstention, right? It was stayed? Yes, the court abstained and they stayed all the federal matters and they remanded just the writ. And on the basis, under the logic of Pullman abstention, because some of the issues may be narrowed, some of the federal claims may be obviated, and that's exactly what happened. So what I'm hearing today in response to the question the district court asked, I think repeatedly, really focusing on preclusion, is the district court asked repeatedly what prevented Sullivan from going forward in litigating. What I'm hearing today is that there was some evidence they couldn't get in, I think, and so they think that their ability to litigate their claim was unfairly narrowed. Would you like to respond to that argument? Yes, he's referring to the idea that there's the elements of issue preclusion, and under the full faith and credit statute, I know this panel understands, you're entitled to the same preclusive effect under the law of the state in which it occurred. So California state law governs in regards to preclusion. Their argument is to, it's sort of an extra element to issue preclusion, did you have a full and fair opportunity, which is the thrust of their argument, and they had the opportunity to do all of this. All of the documents they obtained from the Public Records Act request, they had in their possession even prior to the Board of Public Works hearing and prior to one of the street services hearings, so they had them in their possession. They pled them in their federal complaints, so they had all of the evidence in their possession. When they were remanded, the federal claims were abstained from. They were remanded to state court just on the writ. They had all of that evidence, and they argued for all of it. The state court trial judge who accepted some of their evidence and rejected the rest of it, they had the opportunity to present that to the judge. And I've put into the Supplemental Excerpts of Records, I think it's Volume 3, the fact that the trial court judge who ruled in their favor initially on an unacceptable probability of bias, which the state court of appeal overturned, said that, I have considered, she said repeatedly in her judgments, I considered. In other words, you had the opportunity to argue. You did not explain the relevance. You included a conclusory index that didn't state who sent the email, when it was sent, who received it, what the subject matter was. She was very specific about their shortcomings in argument. They had a, I think they call it 700 pages of evidence, 676 documents. I think they're referring to separate emails. And they didn't bother to analyze each one of them. They took a shortcut. They said, here, we're going to analyze five or six of them or nine, whatever the number was, and just here's the rest, what this conclusory index. So the concept, it's cited in the Camden-Itty case, I think one of the federal cases. Dodd also talks about the fact that what a full affair opportunity means is when you're in front of the tribunal, you're in front of whatever judicial officer, you have to make all the legal arguments and factual arguments that are at your disposal. You can't avoid the effect of issue preclusion by saying, I want to say something differently now, or I'd rather I argued it differently. They had the full opportunity to do that. And they just did not avail themselves of it. Counsel is referring to Lorenzen and false reports. We went over this at great length. It started with a motion for judgment on the pleadings on the issue of issue preclusion, and then Judge Snyder gave them leave to amend, so there was a second amended complaint, a third amended complaint. And counsel brings up new arguments about the trees weren't protected. The removal was necessary for the reasonable development of the property. Again, these are all new arguments based on facts and their possession. And the idea that the trees weren't protected, that was conceded by the prior counsel in this matter. So all of those issues about where they're saying things were narrowed unfairly, they're saying we didn't have an opportunity in case losses, and the facts here say otherwise. Thank you. I think you answered my question. Okay, thank you. And I'll just reserve the rest of my time for any further questions. There's no reservation for appellee either. Do you have anything else to say? I'm not here that often, so I'm sorry I used the wrong vernacular, but I don't have anything further to present if you have any further questions. No, apparently not. Thank you. Thank you. The city attorney says that the client conceded that the trees were protected. They cite to the arborist's declaration in their brief to this panel, this is what the arborist said, the trees were protected. It's in your file. The arborist said tree 5 doesn't mention it being protected. It was a misstatement to the panel this morning. Tree 29 is, quote, barely protected. That's what the arborist said. Tree 30 doesn't say it was protected. The possibility that two of the trees shouldn't have been recognized as protection first come up in court. Our court. Because I looked before, and I don't see any reference of that being said to the district court or any reference of that being said to the California court. It definitely said to the district court. I attached pictures to my opposition to the motion to dismiss. The district judge, Judge Snyder, said, Mr. Walsh, that's interesting. You've got me rethinking this thing. Let me ponder the ruling. Because I attached the pictures to my opposition to his motion to dismiss, Judge Kliff tagged them up in the state court. I think that's one of the issues that the state court judge wouldn't entertain, that the trees were not protected. They were. I didn't see it come up in the state court. If you've got a record set up, that would be helpful. But my understanding is that there was not a contest that at least one of them was protected. I think one was kind of fallen over already, and one was maybe a lilac bush or something. I don't know how you can use that with a city law. That isn't me. It seems like it came out very vague. The city had argued they were protected trees that were wrongly taken down. His response to date does track my notes. I think there was a concession by prior counsel in Fort Sullivan that the trees were taken out, taken out by accident. You know, they had a permit to take out a bunch of trees. They took out three additional trees accidentally. That was his first response. Isn't that correct?  You're absolutely correct. Prior counsel, Jeffrey Mangels, admitted to the fraud that was being perpetrated on it by the city attorney. In fact, let me backtrack for a minute. These were trees that were not moving objects. How was this not within your client's ability to investigate these facts and to bring this argument before the state court? The answer to that, honestly, prior attorney didn't read the arborist's report the way I did. I mean, it's just honest. Well, Judge Acuda's point, I think, is really well taken. It's all the arguments that you raised, all the arguments that you could have raised, because we're just here about issue of inclusion. I think my clients were denied the constitutionally fair hearing based on Clark and Knutson, and that, therefore, that is now a proper claimant in 1983. That's all I can say. I'm not going to belabor these points. Okay. You went a little bit behind, so please wrap up. Okay. You know, by the way, when they cite to the arborist's report, the arborist says tree five is at the front of the property. That's my argument, that it interferes with the development of the property, and, therefore, it can't be protected. I made the argument that was validated by what he said in his brief. Thank you for your time. Again, no signs for the argument in the case of Sullivan Equity Partners LLC versus City of Los Angeles is submitted.
judges: CLIFTON, IKUTA, CHRISTEN